***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff-employee was employed by defendant-employer from March 1951 to February 1, 1982. His last workday was September 11, 1981, but he was paid until February 1, 1982, which was his official retirement date.
2. Defendant-employer, Transcontinental Gas Pipe Line, was insured from October 1, 1965, to February 1, 1982, by Continental Casualty and Transportation Insurance for worker's compensation.
3. The parties are subject to the North Carolina Workers' Compensation Act, since defendant-employer employs the requisite number of employees to be bound under the provisions of said Act.
4. Plaintiff's average weekly wage is the subject of some dispute between the parties. Defendant-employer has advised counsel for plaintiff that it no longer has any of the plaintiff's payroll records. Plaintiff's personnel file indicates that plaintiff was receiving wages of $12.09 per hour at the time of his last workday (9-11-81) and at the time of his official retirement (2-1-82). Plaintiff was scheduled to work 40 hours per week. Defendants contend that plaintiff's average weekly wage should be based upon the year of his diagnosis, and defendants further contend that plaintiff was retired and without earnings at the time that he was diagnosed with the alleged occupational disease. Plaintiff will offer evidence regarding the last wage.
In addition, the parties stipulated into evidence the following:
1. Form 18B.
2. Form 33.
3. Form 33R.
 4. Records from the Division of Public Health regarding asbestos removal.
5. Medical records and reports.
6. Deposition of plaintiff.
7. Defendants' discovery responses.
 8. Plaintiff's personnel file along with some other correspondence and the Form 33.
 9. Packet of records regarding asbestos removal, which was submitted after the hearing.
The Pre-Trial Agreement dated January 10, 2001, which was submitted by the parties, is incorporated by reference.
 *********** EVIDENTIARY RULINGS
Following the deposition of Dr. Dula, plaintiff moved that certain evidence be excluded from the record, specifically Form 1099's from Wallace Graham to Piedmont Radiological Associates from 1998 through 2000 and cross examination testimony regarding previous testimony in other depositions. After review of the motion and defendants' response, it appears that the motion should be denied. IT IS THEREFORE ORDERED that plaintiff's motion to exclude evidence and motion to strike testimony dated April 25, 2001, are hereby DENIED.
 ***********
Based upon all of the competent evidence in the record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is 82 years old and retired, began working for defendant on or about August 1950 at defendant's gas pipeline compressor station in Davidson. Defendant operated a natural gas pipeline along the east coast. The compressor station's purpose was to take the gas out of the incoming pipeline, compress it, and then send it down the outgoing pipeline at a higher pressure. Plaintiff had previously worked for the company, which had built the station and was hired by defendant in June 1950 after construction was complete. However, due to a prolonged hospitalization, plaintiff could not begin working until several months later. His first job was oilier. After holding that position for a year, he was promoted to repairman. He only worked in that position for three months before he became an auxiliary engineer. Plaintiff's employment was interrupted for approximately eighteen months beginning in March 1952 when he was hospitalized for tuberculosis. Plaintiff was allowed to return to work in September 1953 and he worked as an auxiliary engineer until August 1958 when he was promoted to shift engineer, the position he held until he retired.
2. As shift engineer, plaintiff supervised one or two men and was responsible for making sure that the engines and machines at the facility were operating properly. He worked throughout the facility but spent most of his time in the main compressor building where he would circulate among the machines checking gauges and dealing with any problems that arose.
3. There were three buildings at the compressor station. They were constructed using a corrugated siding material called Transite. Transite was a cement-like sheet which contained asbestos embedded in the material. The sheets were three feet wide and six to eight feet long. When additions and repairs were made to the facility, Transite was disturbed by cutting, causing asbestos fibers to become airborne and capable of being inhaled. There was also a project installing new vents on the roof requiring extensive cutting of the roof including Transite, which also resulted in airborne asbestos.
4. Asbestos-containing insulation was also on steam pipes. Some of the insulation was covered by an aluminum jacket. Some of this insulation was damaged, which allowed more asbestos to become airborne. The mufflers on the compressors were insulated with asbestos-containing materials. There were seven of these machines when plaintiff started working for defendant and fifteen when he retired. To plaintiff's knowledge, this material was not disturbed during his employment; however, plaintiff did testify that he would always have dust around him due to the vibrations of the machines and mufflers. He stated that there was white dust on the red floors on a daily basis and that foot prints would be left in the dust if it was not swept up or wiped up. After plaintiff retired, asbestos-containing materials were removed from the facility by an independent contractor.
5. Plaintiff also worked with gaskets that contained asbestos. Plaintiff would have to pry the gaskets off the flanges in order to replace them. Plaintiff testified that he did not have to do this often since he was the shift engineer, but that if it were the middle of the night and it needed to be done, he would do it. Plaintiff testified that he would have to do this once every couple of months.
6. Plaintiff worked at the compressor station until September 11, 1981, when he went on a medical leave of absence. He received vacation, sick, and holiday pay until he retired on February 1, 1982.
7. Defendant never warned plaintiff about the dangers of asbestos and never trained him on how to handle asbestos. There were safety meetings, but asbestos was never discussed. Plaintiff could not recall defendants' ever providing for medical examinations.
8. Defendants' representative, Mark Doss, testified about documents that indicate 2,900 linear feet of asbestos-containing material was being removed as late as 1996. Mark Doss never worked with plaintiff and cannot refute any testimony about asbestos exposure provided by plaintiff. No other testimony was offered by defendants to refute plaintiff's testimony, which the Full Commission finds to be credible.
9. During his childhood, plaintiff had pneumonia three or four times. He also contracted double pneumonia and pleurisy as a youth. In the few years before he began working for defendant-employer, he had other bouts of pneumonia, and he was diagnosed with tuberculosis in 1952. There was no evidence that he was treated for further pulmonary illnesses for years thereafter.
10. On April 18, 1996, plaintiff went to Dr. Sherrill, a pulmonologist in Charlotte, with complaints of increasing shortness of breath for two weeks and a non-productive cough. He advised the doctor that he had smoked one and one-half packs of cigarettes per day for nineteen years until he quit in 1954. X-rays revealed extensive fibrosis in both of his lungs, so Dr. Sherrill questioned him about any exposures to hazardous substances. At that time, plaintiff was unaware of any exposure to asbestos, silicon or coal dust. Dr. Sherrill performed pulmonary function studies, which indicated that plaintiff had mild restrictive disease consistent with interstitial lung disease. A CT/scan was then performed, which revealed a section of extensive sub-pleural honeycombing, a sign of end-stage lung disease.
11. Dr. Sherrill treated plaintiff with various medications and, as plaintiff's condition deteriorated, with oxygen. Plaintiff complained of increasing difficulty engaging in any activities, and pulmonary function studies confirmed progressive deterioration of his condition. In November 1998, Dr. Sherrill referred plaintiff to Dr. Adlakha, another pulmonologist in the office, for an evaluation. Plaintiff saw Dr. Adlakha on December 22, 1998, and advised the doctor that he had been exposed to asbestos for 30 years while working for defendant. Dr. Adlakha reviewed the various medications previously prescribed and tried some different therapies, but plaintiff did not tolerate most of them very well, so the doctor placed him on relatively benign medication. Plaintiff continued to see him until November 1999. There was no evidence of medical treatment after that time, although plaintiff underwent a chest x-ray in December 2000, which was reviewed by Dr. Dula, a radiologist who testified in this case.
12. Dr. Adlakha opined that asbestosis is one of the many causes of pulmonary fibrosis with or without the honeycombing of the lung. Dr. Adlakha also opined pulmonary fibrosis that is bilateral is unlikely to be a result of pneumonia, but could be the result of asbestos. Dr. Adlakha said that with pulmonary fibrosis and honeycomb, it is difficult to distinguish between that and idiopathic pulmonary fibrosis because they look the same, the symptoms are the same, and the examination is the same. Dr. Adlakha said he was not positive as to the cause, but did say that plaintiff's asbestos exposure could have caused or contributed to his pulmonary fibrosis.
13. Dr. Frederick M. Dula, Jr., board certified radiologist, NIOSH certified B-Reader and North Carolina Industrial Commission Dusty Trades Reader, performed a review of plaintiff's chest films and found extensive interstitial disease along with pleural thickening on both chest walls consistent with asbestosis. Idiopathic pulmonary fibrosis or usual interstitial pneumonia look almost identical to asbestosis on x-rays, but the pleural findings are less likely to be associated with idiopathic pulmonary fibrosis and usual interstitial pneumonia. Dr. Dula acknowledged that there are other causes for the interstitial changes, but said that bilateral pleural thickening is most commonly associated with asbestosis, and the Full Commission so finds.
14. Based on the opinion of the doctors in this case and plaintiff's exposure to asbestos in his employment with the defendant, the Full Commission finds that plaintiff has pulmonary fibrosis as a result of his occupational exposure to asbestos during the course and scope of his employment with defendant Transcontinental Gas Pipe Line.
15. Throughout plaintiff's employment with Transcontinental Gas Pipe Line, plaintiff was injuriously exposed to asbestos and asbestos dust. Up to the time plaintiff left his employment with Transcontinental Gas Pipe Line, plaintiff was injuriously exposed to the hazards of asbestos in excess of 30 working days, or parts thereof, within seven consecutive months.
16. There is no evidence in the record to establish that plaintiff was exposed to the hazards of asbestos subsequent to his employment with Transcontinental Gas Pipe Line. Plaintiff was last injuriously exposed to the hazards of asbestos while employed by Transcontinental Gas Pipe Line and during the period of coverage by Continental Casualty/Transportation Insurance Company.
17. Plaintiff timely filed his workers' compensation claim.
18. Plaintiff's asbestos exposure has caused him to have permanent injury to each lung, as each lung is a separate important internal organ.
19. At the time of his retirement and as a result of his occupational disease, claimant has permanent disabilities in that he has permanent injury to two important internal organs; to wit: his lungs, in the form of permanent and irreversible loss of lung function. It can be reasonably presumed that plaintiff has suffered diminution of his future earning power by reason of such loss.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was, up until the time he left his employment with Transcontinental Gas Pipe Line in 1981, injuriously exposed to the hazards of asbestos in excess of 30 working days, or parts thereof, within seven consecutive months. Plaintiff contracted his occupational lung disease as a result of asbestosis exposure while in the employment of Transcontinental Gas Pipe Line. This last injurious exposure of plaintiff occurred during the coverage period of Continental Casualty/Transportation Insurance Company. N.C. Gen. Stat. § 97-57; N.C. Gen. Stat. § 97-53(24); and N.C. Gen. Stat. § 97-62.
2. Plaintiff's claim for compensation due to asbestos-related lung disease was timely filed. N.C. Gen. Stat. § 97-58.
3. Plaintiff was not taken out of employment because of his exposure to asbestos and is not entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis. N.C. Gen. Stat. § 97-61.5, Austin vs.Continental General Tire, ___ N.C. ___ (November 9, 2001, N.C. Supreme Court).
4. Plaintiff is entitled to compensation for the permanent injury of important internal organs, his lungs, due to his occupational disease of asbestos-related lung disease. Plaintiff is entitled to compensation in the amount of $20,000.00 per lung for permanent injury to each lung. N.C. Gen. Stat. § 97-31(24).
5. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, as a result of plaintiff's asbestosis-related lung disease as may be required to provide relief or effect a cure. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-25.1; and N.C. Gen. Stat. § 97-59.
6. The carrier, Continental Casualty/Transportation Insurance Company, was on the risk at the time of plaintiff's last injurious exposure and is, therefore, liable for payment of compensation due plaintiff pursuant to the Act. N.C. Gen. Stat. § 97-57.
7. Plaintiff is not entitled to an additional 10% of the total award. N.C. Gen. Stat. § 97-12.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereafter provided, defendants shall pay to plaintiff $20,000.00 for the permanent injury to his left lung and $20,000.00 for the permanent injury to his right lung, both caused by plaintiff's asbestos-related lung disease. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred, as a result of his compensable occupational disease when bills for the same have been presented in accordance with the provisions of the Act.
3. A reasonable attorney's fee of 25% of the compensation due under Paragraph 1 of this Award is approved for plaintiff's counsel. Defendants shall deduct that sum and shall pay it directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 16th day of September 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING A WITHOUT WRITTEN OPINION
 S/_______________ DIANNE C. SELLERS COMMISSIONER